### DR. I. PRICE v. THE STATE.

#### No. 1701. Decided April 26, 1899.

**1. Physician—Practicing Medicine Without License.**

Article 438, Penal Code, makes it an offense to practice medicine for pay or as a regular practitioner without first obtaining a certificate of qualification from an authorized board of medical examiners, or without having a diploma from some accredited medical college chartered by the Legislature of the State; and article 3787, Revised Statutes, requires that such certificate of the examining board, as to qualification, shall be recorded in the office of the district clerk of the county in which such practitioner may reside or sojourn, before he engages in practice.

**2. Same—License from Another State—Certificate of Examining Board Indorsed Thereon.**

Where an applicant for license to practice medicine in this State presented a license from the board of health of Mississippi to two members of a board of medical examiners in this State, one of whom had previously examined him as to his qualifications, and both of whom indorsed his original Mississippi certificate officially, without issuing a new or separate certificate; whereupon the applicant delivered the said original certificate, after being thus indorsed, to the district clerk to be recorded, and paid the fees; Held, the accused has complied with all the law so far as he is concerned.

**3. Same—Certificate to Practice Medicine.**

The law does not prescribe a form for the certificate of a board of medical examiners, and the mere fact that the certificate is not written out in a formal manner should not operate as a conviction of a defendant for practicing medicine without a proper certificate. Nor is there any law that each and every member of the examining board shall examine the applicant. If one only examine the applicant, and another member indorses the examination by signing the certificate to that effect, the law will not punish the applicant because both did not participate in the examination.

**4. Same—Criminal Intent.**

Where an applicant to practice medicine applied to the board of examiners, secured a certificate, delivered it to the clerk for record and paid all the fees, but the latter failed to properly record it; Held, these facts clearly indicate a total lack of criminal intent essential to a conviction.

HENDERSON, J., dissenting.

APPEAL from the County Court of Young. Tried below before Hon. O. E. FINLAY, County Judge.

Appeal from a conviction for practicing medicine, as a physician, for pay, without first obtaining a certificate of qualification from the board of medical examiners; penalty, a fine of $50.

The opinion states the case.

No brief on file for appellant.

*Robt. A. John,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of practicing medicine as a physician, for pay, without first obtaining a certificate of professional qualification from an authorized board of examiners, etc., and his punishment assessed at a fine of $50, and prosecutes this appeal.

The following is, in substance, all the evidence introduced on the trial: A certificate of the Mississippi board of health, as follows: "No. 298. The State of Mississippi. Office of Mississippi State Board of Health. Know all men by these presents, that Isaac Price, who, according to his letter of application on file in this office, was born in Mississippi, thirty-nine years of age, who resides in Pontotoc County, and whose postoffice address is Mudcreek, and who has spent five years in professional studies under the supervision of the University of Nashville, Medical College of Tennessee, as preceptor (whose postoffice address is Nashville, Tenn.), and who attended one course of lectures at University of Nashville, Tennessee, Medical Schools, who did graduate at Med. Department, Medical College, and who has spent only during course of lectures in hospital, and has practiced medicine four years, and has chosen as his school of practice that of the regular physician, and refers concerning his moral character to Dr. A. J. Hall and Mr. W. L. Sonter of Pontotoc, Miss., has made application for license to practice medicine in the State of Mississippi. Therefore, by authority in section seventeen of an act to regulate the practice of medicine in the State of Mississippi, approved February 28, A. D. 1882, the board of health of the State of Mississippi do hereby license the aforesaid Isaac Price to practice medicine in the State of Mississippi. Issued by order of the Mississippi State board of Health, this twenty-fifth day of April, A. D. 1882. [Seal.] Wirt Johnson, Secretary Mississippi State Board of Health." Appellant presented this certificate to Dr. J. B. Salmon, a member of the board of medical examiners for the Forty-second Judicial District of Texas, which district includes Young County, where appellant resided at the time the prosecution was instituted, who granted appellant temporary license to practice medicine. At the expiration of said temporary license it was extended by said Dr. Salmon until the regular meeting of the board of medical examiners for said judicial district. Subsequent to the giving of this temporary certificate and extension of the same, William M. Powell, secretary of the board, and the said J. B. Salmon, a member thereof, indorsed on the back of the certificate that appellant had theretofore presented to said Salmon, from the Mississippi board of health,

the following: "Wm. M. Powell, M. D., Sec'y. Ex. Board. J. B. Salmon, M. D., Mem. Ex. Board. Members of Board of Medical Examiners for the 42nd Judicial District of Texas. This August, 1st, 1894. Done by order of the board." In explanation of the foregoing indorsement upon the certificate, Dr. Salmon testified: "I am a member of the medical examining board of the Forty-second Judicial District of Texas. I know defendant, Dr. Price. He applied to me for a temporary license to practice medicine in this State, and after examination I granted it to him in all the branches prescribed by law. Afterwards he made a personal application for a permanent certificate from the board. [Here witness was handed the original certificate of Dr. I. Price from the Mississippi board of health.] I know Dr. Powell; he lives in Albany, and is secretary of the board. The signatures on the back of this instrument are his and mine, and were placed there after Dr. Price was examined as to his qualifications to practice. When an applicant came before the board without any certificate, we would examine him and grant a certificate, but when he had one we indorsed it as this was done. After being indorsed by Dr. Powell and myself, it was returned to Dr. Price. Dr. Powell was not present when Dr. Price was examined by me. I was the only member of the board present. He paid the examining fees." Appellant, in substance, stated that he came to Texas about four years ago, and learned through Dr. J. B. Salmon that he would have to be examined and get a temporary license. Appellant did so, and filed the same in the clerk's office. He afterwards applied to the board of medical examiners for a permanent certificate, and gave them his certificate from the Mississippi board of health. The examiners, to wit, Powell and Salmon, took that certificate and made the indorsement upon the same above copied, and gave the same back to appellant as his certificate, whereby he was authorized to practice medicine; that appellant took his certificate, and gave it to the district clerk for record, and paid the fee for recording the same. It was returned to appellant by the clerk, and appellant stated that he never knew that it had not been properly recorded, until after he was indicted. A. T. Gay, the district clerk of Young County, stated: "I know defendant, and made the record of his certificate when first presented. The Mississippi certificate was recorded by me when he came to the county, and I also recorded this temporary certificate. After he brought this certificate back to be recorded again,—that is, the one purporting to be the permanent certificate,—I started to record it, but misplaced it in some way, and did not get all the indorsements on the back of it recorded. The indorsements on the back of the certificate were on there when the same was presented to me the last time. It is my fault that it is not fully recorded."

It appears from the foregoing statement of the facts that appellant presented his Mississippi certificate to two of the medical examiners, and they indorsed their names upon said certificate for the purpose of certifying that they indorsed all the contents of the Mississippi certifi-

cate, and that their indorsement on that certificate was intended as an original certificate, authorizing appellant to practice medicine in the State of Texas. It is true that but one of the board examined appellant, but the other, in the manner above indicated, joined with Dr. Salmon in certifying that appellant was competent to practice medicine. Now, we concede that this certificate is not in regular form, but the clear intent of the examiners was to say, by their indorsement of the Mississippi certificate, that appellant was qualified to practice medicine. They gave it to him for that purpose; he took it for that purpose; he gave it to the clerk, and paid the fees for recording it, believing it was his authority to practice medicine, and did not know anything to the contrary until he was prosecuted in this case. Certainly the mere fact that the certificate was not written out in a formal manner should not operate as a conviction of appellant for practicing medicine .without a proper certificate. The law does not prescribe the form of certificate. Under our law, no man can be convicted without a criminal intent, and around this principle all others gravitate. It appears from the statement of facts that appellant made an application to the board of examiners; that the board granted a certificate in compliance with the statute which says that any two of whom may grant the certificate. It is true that it is defectively worded, but certainly the witnesses would have a right to testify that their indorsement upon the certificate granted appellant by the Mississippi board was intended by the board of examiners to be appellant's certificate. Appellant received it, and filed it with the clerk for record, and has complied with all the law, so far as he is concerned. There is no law that each and every member of the board shall examine him. If one of the board examined appellant, and another member indorsed that examination by signing the certificate to that effect, the laws of this country would not punish appellant because both did not participate in the examination. Article 438, Penal Code, under which appellant was indicted, reads: "If any person shall practice for pay, or as a regular practitioner, medicine in this State, in any of its branches or departments, or offer or attempt to practice, without first obtaining a certificate of professional qualification from some authorized board of medical examiners, or without having a diploma from some accredited medical college, chartered by the Legislature of the State or its authority, in which the same is situated, he shall be punished by fine," etc.

Now, the question for us to decide is, does the certificate above quoted comply with the law? As far as affecting the criminal intent of appellant, we say yes. We have heretofore held that where a physician is prosecuted for failing to record his diploma, and he honestly believes that the same has been recorded, the prosecution could not be successfully maintained. Pettit v. State, 28 Texas Crim. App., 240. Furthermore, in a case wherein a party was prosecuted for carrying a pistol without having the proper authority, Judge Hurt, delivering the opinion of the

court, used this language: "Now, we hold that this appointment, whether legal or not, was in its very nature strongly calculated to induce appellant to believe that he had a legal right to carry the pistol. It is not the object of the Code to punish under circumstances which clearly show there was no intention to violate the act. With this appointment, no doubt, appellant believed that he had the right to take a pistol with him in pursuit of the stolen horses." Applying this well known principle to the evidence before us, the record in this case discloses the fact that appellant had no criminal intent at the time he was charged with practicing medicine, without having a proper certificate. Defendant applied to the board, secured a certificate, carried it to the clerk for record, but the clerk failed to properly record it. He paid all the fees. These facts clearly, to our mind, indicate a total lack of any criminal intent. A long line of decisions by this court has upheld this salutary principle of law, that no man shall be convicted without a criminal intent manifested in the act. Neely v. State, 8 Texas Crim. App., 64; Hailes v. State, 15 Texas Crim. App., 93; Heskew v. State, 14 Texas Crim. App., 606.

We do not think appellant has violated the spirit of the law regulating the practice of medicine in the State of Texas. By reason of this fact, we do not deem it necessary to review the assignments of error. The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*

HENDERSON, JUDGE (Dissenting).—I would not dissent from the opinion of the majority of the court in this case were it not that I believe the decision under the facts of the case has a tendency to nullify our statutes regulating the practice of medicine in this State. See Rev. Stats., arts. 3777 to 3789, inclusive. Certainly it can not be contended that the paper presented in the record is a certificate that in anywise complies with the law. The original has been sent up to us, and it does not show even a diploma, but merely a certificate of one Wirt Johnson, purporting to be secretary of the Mississippi State Board of Health, authorizing said Price to practice medicine in the State of Mississippi, under authority of an act of said State. Said certificate bears date April 25, 1882, and is not authenticated in such manner as can be taken cognizance of in the courts of this State. On the back of said certificate are the following indorsements: "Wm. M. Powell, M. D., Sec'y. of Ex. Board. J. B. Salmon, M. D., Mem. Ex. Board." Below is the following: "Members of Board of Medical Examiners for 42nd Judicial District of Texas. This August 1st, 1894. Done by order of board. Filed April 12, 1898. A. T. Gay, Cl'k. No seal." On the margin is the following indorsement: "Filed for record June 20th, 1893, at 10:00 o'clock a. m. Recorded June 20, 1893, at 2 o'clock p. m. A. T. Gay, C. D. C. Y. C. T." This is all the formal authority that appellant ever pretended to have. Salmon, by his testimony, shows that he was a

member of the medical examining board of the Forty-second Judicial District of Texas, and that William Powell was another member. He further shows that in 1894 he examined Dr. Price as to his qualifications to practice; that, when an applicant came before the board without any certificate, the board would examine him and grant a certificate; but, when he already had one, the board indorsed it as this was done. "After being indorsed by Dr. Powell and myself, it was returned to Dr. Price. Dr. Powell was not present when Dr. Price was examined by me. I was the only member of the board present. He paid the examination fees." Dr. Price testified: "That he went before Dr. Salmon and got a temporary certificate to practice medicine after examination, and filed it for record in the office of the district clerk of Young County. That he afterwards applied to the board of medical examiners for the Forty-second Judicial District for a permanent certificate, and he gave them this certificate from Mississippi, and they returned him the same with the indorsements on the back thereof as hereinbefore set out, and he then filed the same in the office of the district clerk of Young County for record, and paid the fee for recording the same. It was then returned to me by the clerk. And that he never knew that it had not been properly recorded until after he was indicted." Gay testified, substantially, that he was district clerk of Young County in 1894; that he recorded appellant's temporary certificate. Afterwards he brought this one back to be recorded again, and he started to record it, but misplaced it in some way, and did not get all of the indorsements on the back of it recorded. Evidently, as to this matter, he refers to the instrument with the indorsements on the back thereof, as before stated.

Now, the question occurs, taking it for granted that no one can claim ignorance of the law, can it be regarded as in any sense true that the record here shows that appellant made an honest endeavor or attempt to qualify himself to practice medicine in Young County? The statute requires that, although he have a diploma, before he can procure a license to practice medicine in this State, he must be examined thoroughly by two members of the board. This record shows that he was only examined by one member of that board,—Salmon; and I insist that examination was not for his permanent license, but for his temporary license. It is true the record in this case is exceedingly meager; but, when appellant complains of an error because the court did not give a certain charge, he must show affirmatively that he was entitled to the charge. Salmon, as before quoted, says "that he gave him a temporary certificate after examination," and he only speaks of the one examination. He says afterwards "that the signatures on the back of the instruments were his and Powell's signatures, and were placed there after Dr. Price was examined as to his qualifications to practice; that Powell was not present when Price was examined by me." Evidently there was but the one examination; nor does Price himself by his testimony refer to but the one examination. He states that he went before Dr. Salmon, and got a tem-

40th Crim. Reps.—28

porary certificate after examination; that he afterwards applied to the board of medical examiners for a permanent certificate, and gave them the certificate from the Mississippi board of health, and they gave it back to him with the indorsements; and that he then filed it in the office of the district clerk, etc. Now, if there was but the one examination, and that was for only a temporary license, appellant knew that he had never been examined for a permanent license at all. If this record can be strained to indicate that he was ever examined for a permanent license, he was not examined by a quorum of the board, but only by one member, which the law does not authorize. More than this, the board and the members thereof were required to have a seal, and there is no pretense that this pretended certificate ever had a seal on it. It occurs to me that appellant must be held to a knowledge of the statutes of this State, which authorize a member of the medical profession to qualify himself to practice medicine; otherwise, the law is nullified, and we place a premium on ignorance of the law. The makeshift here introduced, in fact, is not even a lame pretense of a compliance with the law, and shows very clearly to my mind an attempted evasion of a provision of the statute made, not only as a protection to the community to insure competent physicians, but intended as a safeguard to the profession of medicine itself; and its provisions should be substantially complied with. At least when one is indicted for a failure to comply therewith, he should show an honest endeavor to comply with its provisions. The Pettit Case, referred to in the majority opinion, is entirely different from this case. There the proper steps had been taken to procure a certificate, and a certificate had been granted by the proper authority. The failure to record the same arose from no fault of Pettit. On the contrary, he had every reason to believe when he engaged in the practice that his license had been recorded. In this case we have a man claiming to be a physician from Mississippi without a diploma from any authorized college, but coming to Texas with only a certificate from a purported secretary of the board of health of Mississippi, and proposing to engage in the practice of medicine in this State. It seems he knew how to procure a temporary certificate, but made a signal failure to procure a permanent license; and I fail to see that the record disclosed any honest effort on his part to procure such license. If the law is to be upheld, and the profession and community protected against incompetents, we certainly must uphold the spirit, if not the letter thereof. The question arose here on the refusal of the trial court to instruct the jury, in effect, that appellant was guilty of no offense if he made an attempt in good faith to procure the license,—that is, went before the authorized medical examining board, was examined, and secured what he thought to be a certificate from said board, authorizing him to practice medicine in this State; and, if he filed the same in the office of the district clerk of Young County for record, and afterwards practiced medicine for pay in said county, in the honest belief that he had a legal certificate, and that the same had been duly recorded by said

clerk, to acquit him. I do not believe the court erred in refusing to give the requested charge on the lame pretense of compliance with the law here disclosed in the record, and I can not agree to a nullification of the law.